THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR
 RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2),
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 South Carolina
 Department of Social Services, Respondent,
 v.
 Father A, Mother,
 Father B, and Child 1  05/09/92,  and Child 2  06/05/93, Defendants, 
 
 of whom Mother
 is Appellant.
 
 
 

Appeal From Berkeley County
 F. P. Segars-Andrews, Family Court Judge
Unpublished Opinion 2007-UP-431
Submitted October 1, 2007  Filed October
 9, 2007
AFFIRMED

 
 
 
 James K. Holmes, of Charleston, for Appellant.
 Paul C. White, of Moncks Corner, for Respondent.
 
 
 

PER CURIAM:  Mother
 appeals the termination of her parental rights (TPR) to her two minor children. 
   We affirm.[1]  
FACTS AND PROCEDURAL HISTORY
On November 24, 1999, the two minor children were placed in
 protective custody based on allegations that Mother posed a threat of harm to
 the minor children.  Father A, Mothers husband and the father of one of the
 minor children, had been accused of sexually molesting two other children.  After
 a hearing on November 29, 1999, the family court found the Department of Social
 Services (DSS) had probable cause to assume protective custody of the children;
 however, the court returned legal and physical custody to Mother because Father
 A had removed himself from the home.  
The merits hearing was rescheduled three times and finally heard
 on June 1, 2001.  At the hearing, the family court found Mother posed a risk of
 harm to the minor children, but allowed her to retain custody subject to a
 restraining order that Father A not be left alone with the children.  Both
 Mother and Father A were ordered to attend individual and family counseling.  
 
DSS commenced another removal case on August 16, 2001, alleging that,
 on August 11, 2001, Father A attempted to sexually abuse a visiting niece when
 he was left alone with the children in violation of the restraining order.  The
 family court issued an order placing the minor children in protective custody. 
 The merits hearing on the second removal action was scheduled for September 17,
 2001, but was continued because insufficient time had been scheduled for a
 contested hearing.  The hearing was continued again on February 27, 2002, for
 the same reason.  On April 4, 2002, the family court ordered the case to be
 immediately set for a two-day trial.  When no hearing was scheduled, Mother
 filed a motion to dismiss.  A hearing on that motion was not scheduled, and
 Mother filed a second motion, requesting an expedited hearing on her motion to dismiss. 
 A hearing on Mothers motion was held on April 24, 2003.  By order dated May
 21, 2003, and filed May 28, 2003, the family court noted new counsel had been
 appointed to represent Mother and ordered the cases to be heard within thirty
 days or the minor children returned to Mother without a further hearing.    
While the matter was under advisement, however, a merits hearing
 on the second removal action was held on May 19 and 20, 2003.  The family court
 found DSS failed to prove Mother left the children unattended with Father A on
 August, 11, 2001, but did find that Mother had left the children alone with Father
 A at some unspecified time.  By order dated June 23, 2003, and filed June 25,
 2003, the family court granted DSS physical and legal custody of the children
 based on a threat of harm.  Attached to the order was a treatment plan
 acknowledging Mother had completed parenting classes and requiring her to complete
 a mental health assessment, follow the recommendations of the therapist,
 participate in family therapy with the children, support the children, and
 provide a safe home for the children. 
A permanency planning hearing was held on June 5, 2003.  By order
 filed July 25, 2003, the family court found, in relevant part, a hearing to
 determine whether the children should be returned to Mother must be held within
 six months.  A supplemental order, which was referred to as a treatment plan,
 was attached.  This treatment plan acknowledged (1) Mother had completed
 parenting classes; (2) Mother had participated in family therapy until August
 13, 2002, when there was a crisis involving the police that resulted in the
 cessation of her participation in family therapy; and (3) Mothers visitation
 rights had been temporarily suspended in April 2003.  This treatment plan also
 required Mother to obtain a mental health assessment, follow the recommendations
 of the therapist performing the assessment, and support the children.  Finally,
 under the treatment plan, Mother was to have supervised visitation with the
 children.  The plan also called for Mother to attend family therapy with one of
 the children so that the two could address certain issues concerning that child
 and complete clarification.  
Mother filed a motion to alter or amend the permanency planning order
 on August 13, 2003.  By order filed November 26, 2003, the family court amended
 the order and required counsel for DSS to submit an agreement to this Court
 which states only those items that Defendants are required to do in terms of
 the treatment/placement plans.  DSS did not submit an agreed-upon treatment
 plan, however, and no hearing was scheduled within six months as the family
 court directed in its July 25, 2003 order.  Furthermore, Mother argues on
 appeal she was not granted supervised visitation in a timely manner.
A second permanency planning hearing was scheduled for July 26,
 2004.  This hearing was rescheduled twice because insufficient time was
 allotted for a contested hearing.  On December 12, 2005, the third time the
 hearing was scheduled, the family court continued the case yet again to January
 23, 2006, this time pursuant to a motion by the guardian ad litem on the ground that Father B, the biological father of one of the minor
 children, had not been served.  In the order of continuance, the family court
 also noted DSS had not followed the statutory guidelines for moving the case
 forward in a timely fashion, substantially affecting Mothers constitutional
 rights and stated the children would be returned to Mother if DSS failed to
 effect service absent good cause in time for the hearing to proceed on
 January 23, 2006.[2]  
The second permanency planning hearing was held on January 23-24,
 2006.  By order filed on April 5, 2006, the family court terminated Mothers
 parental rights.  On April 24, 2006, Mother filed a motion to alter or amend
 the judgment or, in the alternative, for a new trial or relief from the judgment. 
 By order filed on July 26, 2006, the family court denied the requested relief. 
 This appeal followed.  
STANDARD OF REVIEW
Section
 20-7-1578 of the South Carolina Code (Supp. 2006), mandates that the TPR
 statutes must be liberally construed in order to ensure prompt judicial
 procedures for freeing minor children from the custody and control of their
 parents by terminating the parent-child relationship.  See also Joiner
 v. Rivas, 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000) (overruling prior
 cases calling for strict construction of the TPR statutes).  
Grounds
 for TPR must be proven by clear and convincing evidence.  S.C. Dept of Soc.
 Servs. v. Headden, 354 S.C. 602, 608-09, 582 S.E.2d 419, 423 (2003) (citing Santosky v. Kramer, 455 U.S. 745 (1982)).  Furthermore, [u]pon review,
 the appellate court may make its own finding from the record as to whether
 clear and convincing evidence supports the termination.  Id. at 609,
 582 S.E.2d at 423.  The reviewing court, however, is not required to ignore
 the fact that the family court, who saw and heard the witnesses, was in a
 better position to evaluate their credibility and assign comparative weight to
 their testimony.  Hooper v. Rockwell, 334 S.C. 281, 297, 513 S.E.2d
 358, 367 (1999).
LAW/ANALYSIS
1.  Mother contends the
 family court erred in failing to return the children when DSS failed to comply
 with the terms of the December 12, 2005 order issued by the family court.  We find
 no error.  
In its final order,
 the family court found DSS was in substantial compliance with said order as it
 was verbally issued from the bench.  We agree.  The December 12, 2005 order
 mandated return of the children to Mother only if DSS failed to effect timely
 service absent good cause.  Father B, the particular defendant for whom service
 was at issue, had already voluntarily relinquished his parental rights. 
 According to counsel for DSS, he was served December 29, 2005.  There is no
 evidence that the failure to DSS to effect service in time for the hearing to
 proceed was without good cause.  Moreover, the hearing proceeded as scheduled
 and the family court issued a final order in the matter.  Accordingly, although
 DSS did not strictly comply with the order of December 12, 2005, we affirm the
 family courts refusal to return the children to Mother on this ground.
2.  On appeal, Mother
 challenges each of the grounds cited by the family court to support its
 decision to terminate her parental rights.[3] 
 Because we affirm the family courts determinations regarding Mothers failure
 to provide material support to the children while they were foster care, we
 hold DSS established at least one basis for termination of her parental
 rights.  See S.C. Code Ann. § 20-7-1572 (Supp. 2006) (The family court
 may order the termination of parental rights upon a finding of one or more
 of the following grounds . . . .) (emphasis added).
One statutory ground
 for termination of parental rights is a finding by the family court that [t]he
 child has lived outside the home of either parent for a period of six months,
 and during that time the parent has willfully failed to support the child.  Id. § 20-7-1572(4).  Failure to support means that the parent has failed to make a
 material contribution to the childs care.  Id.  A material
 contribution consists of either financial contributions according to the
 parents means or contributions of food, clothing, shelter, or other
 necessities according to the parents means.  Id.  Just as it does in determining wilful failure to visit, the family
 court has wide discretion in determining whether a failure to support is
 wilful.  Headden, 354 S.C. at 612, 582 S.E.2d at 425.  Moreover, the
 family court may look beyond the months immediately preceding the TPR action
 at a parents overall conduct.  Id. (emphasis in original).
Mother paid $304.00
 in five payments over the fifty-three months the children were in foster care;
 however, she paid no money at all during 2002 or 2003.  Although a caseworker
 acknowledged Mother at times brought the children lunch and gave them clothing
 and undergarments, the tenor of the case workers testimony was that these
 in-kind contributions did not evidence any appreciable effort on Mothers part
 to provide for her children.  
On appeal, Mother
 cites evidence that her caseworkers were aware she was unemployed.  We find it significant,
 however, that, the treatment plan called for Mother to support the children and
 Mother herself moved to have her court-ordered child support set at $40.00 per
 month.  Furthermore, although Mother claimed she had made good-faith efforts to
 find work but had not received offers of employment because of criminal changes
 pending against her and Father A, she never submitted concrete, specific
 evidence regarding her endeavors.  We therefore hold the record supports the
 family courts finding that Mother did not provide material support to the
 children according to her means while they were in the custody of DSS. 
3.  Mother further contends the
 termination of her parental rights was improper because the family court erred
 in finding the termination was in the best interests of the children.  We disagree.  
 
The paramount
 consideration in any case involving a termination of parental rights is the
 best interests of the children.  S.C. Dept of Soc. Servs. v. Vanderhorst,
 287 S.C. 554, 561, 340 S.E.2d 149, 153 (1986).  The interests of the child
 shall prevail if the childs interest and the parental rights conflict.  S.C.
 Code Ann. § 20-7-1578 (Supp. 2006).
One
 of the caseworkers testified that, notwithstanding the disruption in the
 childrens lives from the litigation and their entry into the foster care
 system, their lives have become more stable during the time they have been in
 the custody of DSS.  The caseworker further expressed concern that Mother had
 not indicated any willingness to understand the risk the children would face if
 Father A had access to them.  The guardian ad litem expressed a
 similar concern as well as her opinion that visits between Mother and the
 children led to mixed feelings and confusion for the children.  In view of this
 testimony, we hold the family court correctly determined that termination of Mothers
 parental rights was in the childrens best interest.
4.  Although
 we have affirmed the termination of parental rights in this case, we commend the
 numerous attorneys who represented Mother, most if not all of whom were
 court-appointed counsel, for their zealous and thorough advocacy on their
 clients behalf during this prolonged and emotionally difficult litigation.
AFFIRMED.
ANDERSON,
 KITTREDGE, and THOMAS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2] For unknown reasons, this order was not filed until
 January 23, 2006, the same day as the hearing.  
[3]  The family court based its decision to terminate
 Mothers parental rights on (1) Mothers failure to provide material support to
 the children while they were in the custody of DSS; (2) the length of time the
 children had been in foster care; and (3) Mothers failure to remedy the
 condition causing the removal of the children or to otherwise rehabilitate
 herself and the uncertainty that Mother could provide a safe home for the
 children within twelve months.